## WADDELL v. WALLACE.

No. 1178.  Opinion Filed November 18, 1911.

Rehearing Denied February 6, 1912.

(121 Pac. 245.)

1.  **BREACH OF MARRIAGE PROMISE**—Petition—Sufficiency.  A petition in an action for breach of promise to marry, which alleges the necessary jurisdictional facts, and clearly alleges that the marriage contract was entered into and relied upon, and that there was a breach of such contract without fault of plaintiff, and that damages resulted to plaintiff by reason of such breach, states facts sufficient to constitute a cause of action for damages resulting from breach of promise.

2.  **SAME**—Right of Action—Effect of Marriage of Defendant.  Where a woman in good faith enters into a marriage contract with a man, and he fails to fulfill his promise, she may maintain an action for damages against him for breach of promise, notwithstanding the fact that he was married to another woman at the time the contract was made, if such fact was unknown to the woman at the time of the engagement.

3.  **SAME**—Elements of Damage.  In an action for breach of promise of marriage, damages may be recovered for mental anguish, mortification, humiliation, and loss of health resulting from such breach, in additon to the actual pecuniary loss sustained thereby.

(Syllabus by Harrison, C.)

*Error from District Court, Creek County;*
*John Caruthers, Judge.*

Action by Daisye Wallace against Robert S. Waddell. Judgment for plaintiff, and defendant brings error. Affirmed.

*Woodson Norvell,* for plaintiff in error.

*N. J. Gubser, R. P. Elliott,* and *J. R. Ramsey,* for defendant in error.

Opinion by HARRISON, C. This action was filed in the United States District Court for the Western District of the Indian Territory November 9, 1905, by Daisye Wallace against Robert S. Waddell for damages in the sum of $25,520, alleged to have been sustained by plaintiff by reason of defendant's failure to fulfill his promise of marriage to plaintiff. After statehood, the cause was, by operation of law, transferred to the district court of Creek county, Okla., and on November 13, 1908, a jury trial in said cause was had in said district court resulting in a verdict and judgment in favor of the plaintiff in the sum of $3,000. In due time defendant below filed his motion for a new trial, which on November 14, 1908, was overruled by the court, and from which judgment plaintiff in error brings this cause here.

Six distinct errors are presented in the petition in error, but, as the transcript of the record contains none of the evidence at the trial nor any record of the proceedings had during the trial, except the petition, demurrer, order overruling demurrer, answer, instructions of the court, verdict, judgment, and motion for new trial, there is but one question properly before this court for determination, to wit: Whether the petition states a cause of action or whether it was good against a general demurrer.

The petition alleges, in substance: That in April, 1905, plaintiff was an unmarried woman residing in the state of Kansas. That at that time defendant represented to her, plaintiff, that he was a single man. That upon such representations, believing same to be true and relying on the truth of same, at the

special instance and request of defendant, she promised to marry him and he promised to marry her, and that they thereupon entered into a marriage contract, each promising to marry the other, mutually agreeing that the marriage should take place in the latter part of June, 1906. That thereafter, relying on the truth of defendant's representations that he was a single man and relying on the faithfulness of his promise of marriage, she proceeded to make preparations for marriage to defendant, purchasing dresses and other items of apparel constituting her wedding outfit, as expressed in the petition, expending therefor the sum of $520. That, although she was ready to marry defendant at the time agreed upon, he refused to marry her. That thereafter, some time in July, 1905, she met defendant in St. Louis at his special instance and request, and there for the first time learned that he was not a single man, and not eligible to marriage, for the reason that he had a wife from whom he had not been divorced long enough to become eligible to marriage, and that he still refused to marry her. That said representations of defendant that he was a single man and eligible to marriage were false and fraudulent, and that she was deceived and defrauded thereby. That having relied upon defendant's representations that he was eligible to marriage, and believing in the truth of his promises to marry her in the latter part of June, she informed many of her friends of her coming marriage. That, upon learning that she had been deceived and that all of defendant's declarations were false, she was greatly humiliated thereby, and suffered great mental anguish and loss of health therefrom, and was damaged thereby in being deprived of the society and support of a husband in the sum of $10,000, in mortification from facing her friends and comrades in the sum of $6,000, in mental anguish and loss of health, the sum of $9,000, and for the amount expended for wedding clothes $520, for all of which she prayed judgment.

A general demurrer to this petition being overruled, defendant filed his answer, which, in effect, is a general and specific denial of the material allegations in the petition, and which as a

further defense contains the affirmative averments that at the time the marriage contract is alleged to have been made plaintiff was afflicted with a venereal disease, due to no fault of defendant, and that plaintiff had full knowledge that he was a married man, and had agreed to marry him with full knowledge that he was married to another woman. The answer, however, does not state whether or not defendant's refusal to fulfill the marriage promise was due to the facts above.

Upon these issues the case went to the jury upon the testimony. There being no record to show whether reply was filed to any supposed new matter set up in the answer, or whether it was waived by defendant, nor any record of the evidence adduced at the trial nor the rulings of the court in the admission or rejection of same, we must look to the one question heretofore suggested; i. e., whether the petition is bad for failure to state facts sufficient to constitute a cause of action. We cannot determine whether the defendant should have had judgment on the pleadings, nor whether the court erred in the admission or rejection of testimony, nor whether the instructions were inapplicable to the facts, unless we have some record of same before us. As we have none, we will look to the question whether the demurrer was improperly overruled.

To determine this question, we are brought to the inquiry whether a recovery can be had in an action for breach of promise where the defendant was a married man at the time the contract was entered into. It seems to be the well-established doctrine of the courts that where a marriage contract is entered into between two parties, one of whom is married at the time of the contract, and such fact is unknown and by the exercise of ordinary diligence could not have been ascertained by the other party, and the party who is married commits a breach of such marriage contract and refuses to fulfill such contract an action can be maintained against the breaching party and damages recovered for a breach of such contract. "The fact that defendant was married at the time of the promise is not necessarily a defense." (5 Cyc. p. 1004, and cases cited.)

"In an action by a woman for a breach of promise of marriage, held, that the action could be maintained although defendant was married at the time of the promise, if the plaintiff was ignorant thereof. * * *" (*Kelley v. Riley,* 106 Mass. 329, 8 Am. Rep. 336.)

Justice Colt in the same opinion, reasoning further on this question, says:

"* * * The defendant is not permitted to escape responsibility on the ground of his present legal inability to perform a promise of marriage to an innocent party. The damages to the plaintiff are certainly not diminished by the consideration that the promise was made under such circumstances. The strict rule that a consideration to support a promise is insufficient, if its performance is utterly and naturally impossible, is met by the suggestion that, even if the future performance here is to be treated as utterly impossible, yet the detriment or disadvantage which must necessarily result to the plaintiff in relying for any time on the promise affords sufficient consideration to support the defendant's contract."

"One who enters into any forbidden contract in honest ignorance of the invalidating fact sustains to it the like relation as though the fact did not exist. So that if a single woman receives the addresses of a married man who for good reasons she believes to be single, and an engagement follows, she is *rectus in curia* when she brings suit for the breach. The man cannot set up against her his wrong in making the marriage promise. But his being already married was a simultaneous breach of it. So that the woman, without waiting for the time for fulfillment to elapse, may recover her damages." (1 Bishop on Marriage and Divorce, sec. 192.)

"In all cases where the party is competent to contract and knows of his incompetence to marry, whether by reason of an existing marriage or of fatal and disqualifying disease, or otherwise, and the other party is ignorant of his disability to consummate it, damages are recoverable for the breach." (4 Am. & Eng. Enc. of Law [2d Ed.] p. 884.)

And in the case of *Coover v. Davenport,* 1 Heisk. (Tenn.) 368, 2 Am. Rep. 706, the court goes so far as to hold:

"It was held that proof that the plaintiff after the contract was entered into discovered that the defendant was a married man, and did not at once repudiate the contract, but continued

to receive his attentions, and urged him to procure a divorce, did not bar a recovery, but should go in diminution of damages."

This doctrine seems to be well established and equally well founded, not upon the theory that the plaintiff is entitled to recover because the defendant refused to marry, notwithstanding his legal disabilities, nor is it weakened by the theory that a fulfillment of the marriage contract under such circumstances would be in violation of law and would therefore subject the parties to the penalties thereof, but upon the lofty theory that the sacredness of the marriage vows and the keeping pure and holy the marriage relation constitute so much of the very foundation and superstructure of society and civilized government that one who enters into such solemn contract, makes and receives such solemn promises, has the right to expect their fulfillment, has the right to expect a reasonable compliance with every element necessary to a marriage contract, has a right to expect that the other party is eligible to marry, and to expect a fulfillment of every promise and representation made relative thereto, and a right to recover for the disappointment resulting from a breach thereof.

The next question, then, is whether the facts stated in the petition are sufficient to entitle the plaintiff below to recover under this rule of law. The petition clearly shows on its face that a marriage contract was entered into by plaintiff and defendant; that plaintiff acted in good faith therein and relied thereon; that she was ready to fulfill her promise at the appointed time; that the contract was broken by defendant's refusal to marry her; that defendant was wholly at fault in the breach thereof; and that plaintiff was damaged by reason of such breach, and setting out the items and amounts of damage sustained from different features of the wrong. We think this is all that the law requires in order to make a petition good on general demurrer. It is a statement of one cause of action.

"The plaintiff having established a promise and breach with loss, a *prima facie* case is made out, thus throwing upon the defendant the burden of vindicating himself." (4 Am. & Eng. Enc. of Law [2d Ed.] p. 891, and notes.)

"The complaint, declaration, or petition should set out all facts which are relied upon as constituting the cause of action, clearly alleging both the promises to marry and their terms, and defendant's breach. Those comprise all the issuable facts in the action, and are all that need be alleged in order to constitute a cause of action." (5 Cyc. pp. 1007, 1008, and notes.)

"A jury in making up its verdict of damages in a breach of promise case estimates the plaintiff's pecuniary loss precisely as in a suit on an ordinary contract, then adds thereto whatever under the circumstances is deemed just for the resulting mental suffering." (1 Bishop on Marriage and Divorce, sec. 227.)

We think these authorities announce the true rule of law in such cases and think the petition comes within such rule.

The one remaining question, then, which affects the petition, is whether damages may be recovered for mental anguish, mortification, and loss of health resulting from the breach of promise.

"In this aspect of the case 'the damages which the law affords for a breach of the contract should,' to quote the words of a learned judge, 'be proportioned to the benefits lost by the breach,' to the advantages which would result from performance. Hence the pecuniary condition of the defendant and the consequent benefits of the marriage, the fact that the female plaintiff has no independent means, expenses incurred in getting ready for the marriage, and any other matter of the like sort, may be submitted to the consideration of the jury. The wounded feelings and affections, the plaintiff's mental pain and mortification consequent upon the breach are elements of damage. And if the complaining woman, relying on the man's promise, announced the fact of the engagement and invited her friends to the wedding, creating a special mortification, her damages will be made thereby still greater. So they will be by any other contumely or aggravation attending the breach. And evidence of the effect actually produced upon her mind is admissible." (1 Bishop on Marriage and Divorce, secs. 228-229.)

"Under a general allegation of damages, plaintiff may recover, not only an indemnity for pecuniary loss and the disappointment of reasonable expectations of an advantageous settlement in life, but also compensation for injury to feelings and affections and mortification undergone." (5 Cyc. p. 1009, and

authorities therein cited, and 4 Am. & Eng. Enc. of Law [2d Ed.] pp. 896-898, and authorities therein cited.)

From the authorities above quoted and from many others we have examined, and from the facts alleged in the petition, governed by the general rules of pleading, we conclude that the petition stated a cause of action, and that a general demurrer thereto was properly overruled by the trial court.

The judgment, therefore, should be affirmed.

By the Court: It is so ordered.